Similarly titled, Power Integrations against Semiconductor Components, 18-1705. Mr. Pollack. Good morning. May it please the Court, Howard Pollack for Power Integrations. This is actually the fifth appeal to this Court that relates to the validity of Power Integrations 876 patent. In this argument, I want to address two issues as to Claim 17 and 19 of the patent. The issue of the IPR dispute actually being moot because of this Court's decision in the parallel ex parte re-exam. Do I understand correctly, the mootness of the original 17-19 is undisputed? That's correct. And you ask that the final written decision on that be vacated? Correct. And the remaining dispute is whether we should take up the amended claims which the Board never addressed? Actually, my understanding of the dispute is whether or not this Court should remand to the Board for any further proceedings with regard to Claim 17-19. Our position is no, there's no point in a remand. The Board doesn't have jurisdiction over those claims because they weren't part of the petition. And even if they did, this Court's decision in the ex parte re-exam would fully resolve any legal or factual issues that could be raised before the Board. And so there's no point to a remand on those claims because there's nothing further for the Board to do. In the ex parte re-exam, what's it called, I guess, semiconductor components would not be a party, is that right? They were not a party until they acquired Fairchild, but they became a party while that ex parte re-exam was pending. I'm sorry, party to the ex parte re-exam? Really? Well, in the sense that their interest in the ex parte re-exam was the same as Fairchild's initially, but you're right, they weren't actually involved in the re-exam, but they were at that point the entity that had filed the re-exam. Right, but I guess maybe I misunderstood. I thought you were suggesting that there would be no point in sending this matter back to the Board in this IPR, put aside whether there's jurisdiction, but because, I think you said, in the appeal of the ex parte re-exam, that's in front of us now, is that right? No, no, the issue is that the issues, the legal and factual issues that were decided by this Court in the context of the ex parte re-exam were specifically the interpretation of the claims and whether or not a particular piece of prior art that had that reference disclosed the properly construed claims. Those are the exact same issues. In the IPR, the same prior art was raised and the same issue of claim construction was raised. So what I'm saying is I don't believe the Board having that guidance from this Court as to the proper construction of the claim and what the prior art actually discloses could reach a different decision at this point on those issues because this Court's decision is legally abiding, certainly as a matter of law, and there's no different factual dispute. The second issue I'd like to address is claims 14 to 16. Before we get there, can we revisit privity? I was not going to revisit privity except to point out there's two minor differences in the procedural posture of this appeal versus the one we just heard about, which is that in this appeal the Patent Office did not intervene and in this appeal ON didn't raise the waiver issue that it raised in the prior appeal that was discussed. But I'm happy to answer any questions you might have. I don't think the issues are any different from what you just heard. I guess I have maybe a due process question. I know there's an argument as to whether ON here has its own independent interests in protecting itself against this patent from Fairchild. We hear that ON has its own products and they're concerned about this patent, so they want to vindicate the interest in protecting their products, and that they don't merely have a derivative interest from Fairchild. And so the question is, given that independent and distinct interest, is there some due process problem in precluding ON from going forward in this proceeding, given that they never had an opportunity to participate in the District Court Fairchild litigation, and now by virtue of at some point during the course of the IPR proceeding they had entered into a merger here with Fairchild. So I will address that. The issue here is that there's no evidence in the record. There wasn't any evidence in the record before the board. I'm just saying assume, I'm sorry, assume for the moment that ON or a party like ON under these circumstances in fact does have its own independent and distinct interest in protecting itself from this patent. And now they essentially are being deprived of their day in court or day at the PTAB. I think applications and internet time answers that. I believe the case said it doesn't actually matter whether the party who became the privy or was in privity with a precluded party has their own independent interest. That doesn't trump the fact that they're in privity with a party that should be precluded. So I think the case answers that because we're looking here at whether it's fair for a party to come in and buy a party who had its day in court, had a full and fair opportunity to litigate. There was a final judgment rendered against them. And basically just can undo that simply by virtue of buying that company when that interest goes on. I think that the more interesting question and one we're not facing is what would happen if they bought Fairchild and then divested the business of Fairchild that was at issue in the first case. And then they no longer had the derivative interest of Fairchild but only at that point had their own independent interest. That might be a more interesting question. But I think because they didn't and the interest in our view was primarily the derivative interest of Fairchild, that's what the board found, the fact that there might have been an independent interest should not raise the concern of due process. With regard to claims 14 and 16, we believe the board's conclusion on the legal question of obviousness was erroneous for two reasons. First, the board erred in assessing the objective indicia of non-obviousness, critically in actually not addressing this court's prior decision on those objective indicia. In fact, ignored the prior litigation entirely in determining that the objective indicia didn't apply. And also the board applied impermissible hindsight in finding a motivation to combine two references that were on their face incompatible. I want to talk about the objective indicia question. This is the nexus issue, right? Well, yes and no. The board spent all of its time talking about nexus for commercial success. Is there an identity between the claimed invention, say what claim 14 recites and what the commercial product is? Yes, there is. There's no dispute. Is there also identity between the commercial product and what's recited in claim 1? Yes, there is. So claim 1 and claim 14 are identical? No. Claim 1 and 14 are embodied by the same product. They're both embodied by the same product. I don't know what you mean by embodied because I understand what I mean when I say identical. I don't know now what you mean when you say embodied. Okay, so if you think of the scope of the two claims, they each have their own scope. The scopes overlap and within that Venn diagram overlap is the commercial product. So the commercial product practices a circuit which is covered by claim 1. That same circuit is covered by the more detailed limitations recited in claims 14 through 16. So the commercial product itself, and there's evidence actually before the board, which the board didn't actually address, that not only was the product successful because of the broader invention. If a claim encompasses a million different embodiments, can you say that there's a nexus to a commercial product which represents only one embodiment that's encompassed by the claimed million embodiments? Yes. I think the law says that if the commercial product embodies the claimed invention, there's a presumption of nexus. And the burden shifts to the party challenging it to show that there were some reasons other than the use of the patent and invention that was responsible for the commercial success. In this case, there was no such evidence. There was no evidence by Ahn and there was no evidence that the board cited of some reason that the tiny switch in particular was commercially successful other than the fact that it practiced the inventions of claim 1 and claim 14 through 16. And in fact, there's specific evidence on the narrow limitations of claims 14 through 16 including the size of the current sources and the binary weighting characteristic of the current sources from Mr. Matthews that was unrebutted that the board didn't even address. Finishing up on this, actually before I sit down, I want to focus this court on, there was evidence in the record of other objective indicia of non-obviousness, substantial evidence of copying and praise by competitors, of long-felt need and failure of others and departure from the conventional wisdom. All of these other objective indicia were noted by this court in the Fairchild, what we call the Fairchild 1 case at 7-11, Fed Third, 13-68 and 13-69. And there was additional evidence on those points in the record before the board at Appendix 7-19 to 7-23, 7-37 to 7-40 and 7-42 to 7-45, which were testimony from Mr. Matthews and evidence from the trial record that the Federal Circuit decision was based on. The board failed to address any of that. All it talked about was commercial success about tiny switch. We think for that reason alone, the board's decision on obviousness is legally erroneous. How can the board ignore evidence in the record of objective indicia? One, the law says they can't. If the evidence is there, you have to consider it. But two, that was evidence that this court found critical in the question of obviousness in the prior litigation. So we think for that reason alone, the board's decision on obviousness needs to be vacated. Thank you. Mr. Hawes. Good morning, and may it please the court. Michael Hawes for Petitioner SCI. I'm certainly willing to answer any questions the court has, if it has more questions, about 315B. But also, I want to turn to some of the specific issues in this appeal that are raised,  With regard to climate change, I think it's important to understand that in claims 17 through 19 first, this is actually a very interesting situation. And I believe it's the first situation that has arisen in these circumstances to this court, which is where after the final written decision, after the appeal, you have a reexamination certificate that changes the underlying claims, but changes them in exactly the same way that the patent owner amended them and the board ruled on the patentability of that amendment. And it's important to note that this is on a different record than the record in the ex parte reexam. As was noted, that's an ex parte reexam. There is no party to that reexam except, of course, the patentee and the patent office. And the record, especially the expert testimony, is very different. All we are asking this court to do is, under these circumstances, follow the usual practice of this court, which is where an issue that has never come up before, the change in the claims during the appeal of the IPR occurs, let the board take the first shot at determining what ought to happen in that circumstance. And I would point the court to a recent notice in the Federal Register by the Patent and Trademark Office, where they address similar issues. And this just happened two weeks ago, and it was published with docket number PTO-P-2019-0008. And in that notice, what the Patent Office discussed was options for amendments by patent owner through reissue or reexamination during a pending AIA trial proceeding. So it's important to note the Patent Office is looking at this very issue. In other words, what happens when you amend at the same time that an IPR is going on? And I would just point the court that on page 10 of that notice, the office points out that one of the key factors is whether amending the claim scope in one proceeding would affect the claim scope in another proceeding. Now, there are a lot of factors that the Patent Office looks at here. And the patent owner here has just said, just remand and tell them to dismiss. But we would ask that you remand it and allow the board to take into account these factors. The board may well decide that it's going to dismiss. But given the attention the Patent Office is paying to this subject, we would ask that the court remand and let the board consider it in the first instance, of course, subject to this court's review on appeal. Would I be assuming correctly that if there's a 315B problem, that issue doesn't come up? Your Honor. Right? Yes, this entire IPR is subject to that. If there is not a 315B problem, do you have a procedural avenue to attack before the board the amended claims apart from a remand? Apart from a continuation of this current IPR under whatever circumstances, remand or otherwise, we could not file a new IPR. We would be barred. And that's actually one of the points the Patent Office raises. We would be barred by what? By 315B. Because a new filing, that petition date, would certainly be long after the merger. And that's from the 315B. One of the basic things I think needs to be brought out on the 315B is that a company that is looking at a situation where a transaction is going to basically inherit a bar, and that company has its own products and its own interests, the position that's being taken here is that that company just loses. They never have a chance to have their own day in court. And I agree that we should not be interpreting this statute in a way that creates such a due process problem. And I would also point out that where our counsel here for PI said, oh, that's not in the record, that's not in the record, we cited to in our brief and pointed out the accusations of patent infringement by Power Integrations against OnSemi well before the merger agreement. And we pointed out and cited to that in the appendix. And there was no challenge that that was inappropriate by Power Integrations. So it's certainly in the record on appeal that we had an independent interest, our own products being accused. And what they want is to say, well, you never get a chance to defend that with an IPR, even though Congress clearly put together the IPR system so that a party in On's shoes, someone who had their own products that had been accused of infringement, could bring such an IPR. I guess you would concede, though, that if this merger had gone through before the time of filing the petition, then you would be barred. And so these policy arguments just go by the wayside. Well, these policy arguments tell you that a party doing their due diligence, which is what all parties do when they're in a merger, you look at what's the situation, and discovers this, has the opportunity to file. And because on that petition date, they are not in privity, using the Taylor versus Sturgill factors as the board did here, they have the opportunity to file and have their case heard. So I do think it makes a big difference. But if the merger had gone through before the petition filing, then you concede you're barred from having any day in court or any day at the board. If we had failed in our due diligence and hadn't identified the issue, yes, I think that's true. But that's true for any legal issue. Any time you're merging, there might be a problem with the company you're merging with. So that's always a potential problem. Here, they're trying to say it doesn't matter that you found the problem. It doesn't matter, because you can't petition. Because as long as the merger happens sometime during the IPR, you're going to be retroactively barred. And we think that doesn't make sense with Congress wanting a party with its own products who've been accused of infringement to have a chance to challenge the patent. Wait a minute. Sometime during the IPR, perhaps, was asserted. But that's not the primary position. It's the moment of institution. Institution. But of course, institution was left to the patent office's discretion. Congress didn't say, you'll make the decision of institution six months after, or you'll make it five months after. The patent office actually has complete and unfettered discretion to choose when to institute. And that's another oddity with power integration's position. Because you could have a board who says, well, we could rule on institution today. But if we wait till next week, it'll be barred, because by next week, this merger will have completed. That seems a very odd circumstance for Congress to set up to say that the arbitrary date of institution will be determinative on the substantive issue of whether there's a bar. It also, of course, is completely inconsistent with this court's discussion of the bar as a determination of the timeliness of the petition, which is how it was described in the Wi-Fi One case, the second Wi-Fi One case after the change in Acades. So those factors all suggest that pinning it to that particular institution decision doesn't make any sense as a congressional choice. Because all of a sudden, you have this arbitrary choice of when institution decision occurs, driving the substantive question of whether there's a bar, whether the petition was timely. So for those additional reasons, I think, reading it that way and ignoring the condition, and Your Honor, you pointed out that the language says, yes, you may institute. But the if, the condition, is about the petition. And that is the question when it comes to a 315 bar. The question is the if. We all know that you talk about it in the institution decision, sure. But the question is, is it a bar? And the condition, the language the statute uses to decide whether it's a bar talks about the petition, not about institution. I do want to address some of the issues that were raised on the substance of claims 14 to 16. First of all, we heard a lot about the previous appeals. The previous appeals did not include or consider the claims at issue in front of this court today. Claims 14 to 16 were not asserted in that case. There's no testimony about 14 to 16 in that case. And the record is completely different. Secondly, I would point out that Counsel for Power Integrations made the assertion that the board ignored the litigation. And I would point the court to the appendix at page 14. And that's in the final written decision. On page 14 in the final written decision, the court specifically says, and this is at the bottom right under the objective considerations heading, patent owner contends that multiple juries, the district courts, and the Federal Circuit have all concluded that the 876 patent is non-obvious based on evidence that others in the industry and all the different factors. The board looked directly at those previous litigations and that evidence to say that they ignored it. I mean, it's just contrary to the language in the final written decision. So what did they do? They looked at it. And they looked at the arguments made by SCI. And I would point you to the next page of the final written decision, page 15. The board pointed out that we argued, SCI, that any presumption of nexus is overcome by the fact that the patent owner previously attributed the same evidence of secondary considerations to features of claim 1 that are not present in claims 14 or 17. So again, they say, oh, the board didn't even talk about the presumption. The board did talk about the presumption. The board said, we recognize that the argument is made that, yeah, there's a presumption. But it's overcome because all these secondary considerations are being tied to specific requirements of claim 1, not found in claim 14. So then the board analyzed that argument. And on the next page says, the board makes the finding the very features patent owner relies upon to demonstrate non-obviousness of the invention recited in claim 1 are not features of the claims that are the subject of the challenges in this proceeding. This board looked at the presumption. But it is not an irrebuttable presumption and said, you can overcome that presumption if you can show that the secondary considerations evidence is tied to specific features that aren't in this claim. And what about the other side's argument that the claim here embodies the commercial product, just like claim 1 also might embody the commercial product. And under our case law, you get to have a nexus there. Well, Your Honor, so I actually agree with all that until you get to the end of it. I actually don't have the problem with the Venn diagram, the overlap in the middle. That's where the product is. But once you get to the presumption, that's not the end of the story. Under this court's law, you can rebut that presumption of nexus. And one of the ways you can do it is by showing that the secondary considerations evidence is not commensurate in scope with the claim at issue. We heard a lot of argument about the 876 patent. The 876 patent is not what's at issue here. What's at issue here are claims 14 to 16 of the 876 patent. The analysis never rebutted is that the secondary considerations evidence here is tied to the particular digital jitter requirement of claim 1 that isn't in claim 14. And it's in our brief, and we cite it to the specific pages. But I can give you a couple of those. But the testimony by their president, Mr. Balakrishnan, in page A734, and that's it. The page of the transcript is 957 lines 1 to 3. The testimony of their own vice president of marketing, Mr. Matthews, that's at A469. Again, the testimony is on pages 25 and 26. And they both said it's these specific digital jitter characteristics that caused the commercial success and all the wonderful praise and the solutions of problems. Claim 1 has those elements, those digital jitter elements. Claim 14 does. So the point here is that nexus is a factual issue. Do I remember right? Does the burden process or framework work to say they might get a presumption, but when you put on evidence that might point the other way, who has the ultimate burden of persuasion on the nexus? Because the way that the board wrote what pages 15 and 16 of the opinion suggests that the board was finding that the patent owner did not sufficiently prove nexus. And I guess I'm trying to understand how that fits with a presumption assuming one exists. Let me hit both parts of that. First of all, I agree that on any issue of obviousness, the final burden of persuasion is on the petitioner. So SCI had the final burden of saying secondary considerations evidence is here entitled to little weight because of a lack of nexus. But I would point the court to the final written decision on page 16. And this finding is a finding that shows that we met that burden. It says the very features patent owner relies upon to demonstrate non-obviousness reside in Claim 1 are not features of the claims that are subject to the challenges in this proceeding. That is not a they didn't meet their burden. That's an affirmative finding. Yeah, the next sentence is kind of they didn't meet their burden, isn't it? In view of the above, we agree that the evidence is insufficient to show a nexus. Right, and that's because they had a presumption. And then the evidence itself, we pointed out how the evidence itself showed that there wasn't commensurate in scope. The board made an affirmative finding in our favor. And then based on that said there's not enough evidence here. And the secondary considerations are, of course, brought by the patentee. They're not brought by us. So all we needed to do, and we had the burden to do this, was to show that the nexus was rebutted. And there is language in the final written decision confirming that we showed that. And that's the language saying that these secondary considerations are tied to Claim 1, features that aren't found in Claim 14. And that's a question of fact. And all that was needed was substantial evidence for the board to make that finding. Nexus is definitely a question of fact. And here, what we really have is, well, what about this piece of evidence? What about that piece of evidence? They're asking you to reweigh the evidence here. Nexus, question of fact, substantial evidence should be sufficient. Finally, I just want to make one more comment, and I know that I am at the end of my time. They made a comment about, well, there's all these others. If you look at their briefing, and specifically I would point the court to page 372, which was their patent owner response, they never argued Claim 15 by itself, individually. They now make that argument in their reply brief. That's the first time in however many years that they've said, oh, Claim 15, you should look at secondary considerations for Claim 15. This is the first time ever in their reply brief that's been raised. This court shouldn't consider the Claim 15 specific arguments. Unless there are any further questions, I thank you all. On the Nexus question, the board hung its hat on this digital, the quality of digital, and in the discussion we had previously, there's no finding that Claim 14, 15, or 16 preclude a digital implementation. In fact, the part that no one disputes practices those claims was digital. So we have a situation here where the board is saying, well, the claim doesn't explicitly require a digital solution, but it encompasses a digital solution. So how is it that the success of a digital solution somehow undercuts Nexus for the claims that are at issue here? And there's no case law that says if a product practices two claims in the same patent, that evidence of Nexus to one claim somehow precludes that same evidence applying to a different claim. That's just not the law. It seems like a really inconsistent result. Well, one claim talks about digital jitter. That's Claim 1. Claim 14 doesn't say anything about digital jitter. Am I wrong? Actually, that's not the case. There are specific elements in Claim 1 that the witness has said, yeah, those are digital elements, for example, a DAC and a counter. Those elements are not recited in Claim 14. But the claim talks about using current sources and switching current sources. And that embodiment was done digitally. Now, it might also not be – you don't have to do it digitally. You mean done in the marketplace by you as a company? You mean done in the marketplace of your product? Exactly. In the embodying product for which the commercial success evidence applied. And including in Claim 15, it goes even more detailed about binary-weighted current sources, which are digital. But the board never made a finding where they said these claims exclude digital technology. They just said the claims don't require it. We don't believe that that is sufficient basis legally to throw out the presumption of nexus. There's a lot of discussion on the privity issue. I do want to point to the Closter case, which was discussed earlier today at 793 Fed 2nd, 1583, on the issue of how courts deal with the timing, where it said courts have repeatedly found privity where after suit begins, a non-party acquires the assets of a defendant. So certainly after the complaint, privity can arise in a district court litigation. We think that would be consistent with our interpretation of the statute here, that at least as of the time of institution, you shouldn't ignore privity that has arisen up to that point. Thank you very much. The case is submitted. Thank you.